FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 0 2021

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

Abdul Maalik Muhammad #129616
(Gregory Holt)
Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168
Pro Se

This case assigned to District Judge ___Moody___
and to Magistrate Judge___Ray___

United States District Court
Eastern District of Arkansas
Central Division

Abdul Maalik Muhammad #129616
(Gregory Holt)

            Plaintiff

    vs.

Jacob Higgins, Security Threat
And Terrorist Group Coordinator
of the Arkansas Division of Correction,
            Defendant

Case No. 4:21-cv-01226-JM-JTR

Verified Complaint
For Declaratory And
Injunctive Relief

Jury Trial Demanded

1

## Introduction

(1) Plantiff Abdul Maalik Muhammad, also known as Gregory Holt is a prisoner in the Maximum Security Unit in Tucker, Arkansas, which is a part of the Arkansas Division of Correction. Plantiff is a devout Muslim who follows the Sunnah of the Prophet Muhammad (saws) and the Salaf of our Rightly Guided Predecessors. Plantiff is also an outspoken Muslim who speaks out on issues involving Muslims both incarcerated and those in the world who are fighting oppression. He has litigated over Muslims wearing beards in the ADC (See Holt vs. Hobbs, 574 U.S. 352, 2015) and is currently seeking separate Jumu'ah services distinct from the Nation of Islam. (See Holt, et al. vs. Kelley, et al., Case No. 5:19-CV-81-BSM, U.S.D.C., E.D.Ark.). In addition to the above, Plantiff has lived and studied in the Muslim world, made hajj, written nasheeds critical of Muslim interventionists who support U.S. meddling in Muslim affairs, and has staunchly advocated the right of Muslims to use armed

2

resistance in support of self-determination,

(2) As a result of past activities and travels, Plaintiff was placed in a Security Threat and Terrorist Group file on May 17, 2017. He became aware that he was in such a file on July 20, 2021. Efforts by both counsel for Plaintiff in Holt, et. al, vs. Kelley, et. al, and by Plaintiff himself through the filing of a grievance to have his name removed from the file proved unavailing. The placing of his name in an STTG file is a violation of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. Section 1983.

(3) Jacob Higgins was consulted with by Plaintiff and by Christine Cryer of the Office of Legal Counsel of the ADC regarding Plaintiff's placement in the file. Mr. Higgins told Plaintiff that he could not remove Plaintiff from the file unless a court ordered him to. He stated there was no "debriefing system" currently available in the Division of Correction. Mr. Higgins reiterated that the Lake Charles, Louisiana, resident agency of the Federal Bureau

3

of Investigation had provided him the information that led to Plaintiff's being designated a jihadist and domestic terrorist.

(4) Plaintiff seeks declaratory and injunctive relief which would bar the Division of Correction from leaving his name in the file.

## I. Jurisdiction and Venue

(5) This is an action for declaratory and injunctive relief arising under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. Section 1983.

(6) This Court has federal question jurisdiction over Plaintiff's claims of violations of the U.S. Constitution pursuant to 28 U.S.C. Section 1331 and 42 U.S.C. Section 1983.

(7) Plaintiff's claims for declaratory and injunctive relief are sought under 28 U.S.C. Sections 2201 and 2202, 28 U.S.C. Section 1343, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of

4

this Court.

(8) Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. Section 1988, which authorizes the award of attorneys' fees and costs to prevailing parties under 42 U.S.C. Section 1983.

(9) The Court has personal jurisdiction over the Defendant because Defendant resides and conducts business in the State of Arkansas.

(10) Venue is proper because the Defendant operates within the geographical boundaries of the State of Arkansas, and a substantial part of the acts described herein occurred within the Eastern District of Arkansas. Venue is proper under 42 U.S.C. Section 1391.

# II. Plaintiff

(11) Plaintiff is and was at all times mentioned herein a prisoner within the custody of the Arkansas Division of Correction. He is currently housed at the Maximum Security Unit in Tucker, Arkansas. Plaintiff has raised substantially the same claims in another proceeding in the Eastern District of Arkansas. (See Holt, et al. vs. Payne, et al., Case No. 5:19-CV-00081-BSM, U.S.D.C., E.D. Ark., June 16, 2021, DE# 96) The claims there related to litigation involving separate Jumu'ah services in the Division of Correction. The requested relief was a preliminary injunction and/or a temporary restraining order. Counsel in that case advised Plaintiff to file a separate lawsuit.

(12) Plaintiff is a devout Salafi Muslim that believes that his placement in the STTG file is a direct and proximate result of his being outspoken on issues affecting the worldwide ummah of Muslims and for his travels to the Muslim world.

## III. Defendant

(13) Defendant Jacob Higgins is the Security Threat and Terrorist Group Coordinator for the ADC. Defendant Higgins is the ultimate decision-maker with authority to approve the placement of an incarcerated person in the file. Defendant Higgins is being sued in his official capacity only.

## IV. Exhaustion Of Legal Remedies

(14) Plaintiff has exhausted all remedies as to all parties and issues. (Exhibit 1)

## V. Facts

(15) On or about May 26, 2021, Plaintiff was accosted at his cell door by members of the Division of Corrections' K-9 Unit. Under the pretense of "reintroducing themselves to the unit" after a 1 year hiatus due to Covid, they stated that they were talking to the "high ranking leaders" of all of the groups.

Plaintiff was advised that he was in an Security Threat and Terrorist Group (STTG) file, was a domestic terrorist, was "radicalized", had to be a part of something" because "he was a practicing Muslim." Further, the K-9 officers stated that should any members of his "group" do anything, he would be placed in restrictive housing. The officers did not define who or what this group was. The officers attempted to relegate the Plaintiff to the status of a leader of a prison based jihadist gang.

(16) Given that Plaintiff was asked very specific questions about his beliefs or was subjected to assertions regarding "extremist" groups, including Daesh, the Taliban, and others, Plaintiff became alarmed about the direction the conversation was taking. Plaintiff asked to speak to Defendant Higgins in order to straighten the situation

out, but was advised that Mr. Higgins was not available. At the conclusion of the conversation, Plaintiff was advised that he was in an STG file.

(17) Plaintiff notified both Attorney Gadeir Abbas of the CAIR LDF and Professor Douglas Laycock of UVA Law School about the exchange. Professor Laycock contacted Christine Cryer of the Office of Legal Counsel of the Arkansas Department of Correction about the incident.[FN1] Ms. Cryer initially denied that Plaintiff was in such a file and even went so far as to state that the K-9 Unit was not even on the premises that day and hadn't been for almost 2 years! This was based on the representations made to Ms. Cryer by then-unit warden Jared Byers. To Plaintiff's knowledge, Ms. Cryer never rectified the situation.

(18) On July 20, 2021, Plaintiff spoke to Cynthia Gaines, who at the time was the

FN1- Professor Laycock engaged in some e-mail exchanges with Ms. Cryer, ~~Plaintiff will~~ forward them to the Court upon receipt.

institutional gang investigator. Plaintiff had previously spoken to Ms. Gaines about the STTG designation and inquired as to how to be removed from the file. Ms. Gaines advised the Plaintiff to send her a request and that she would forward the request to Defendant Higgins. The July 20 conversation was in regards to that request. Ms. Gaines stated that Defendant Higgins stated that (a) he would not remove him from the file; (b) that Plaintiff is a designated jihadist and domestic terrorist, and (c) that the information had been gleaned from the Lake Charles resident agency of the Federal Bureau of Investigation.

(19) Accordingly, on July 26, 2021, Plaintiff filed an informal resolution regarding the conversation with Ms. Gaines and regarding his placement in the file. (Exhibit 1) There was no answer at Step 1, so Plaintiff proceeded to Step 2, the formal grievance stage. (Id.) At that stage, on August 3, 2021, one of the MSU Grievance Supervisors attempted to block access to the procedure by

10

stating that more than 15 days had elapsed between placement in the file and the instituting of the grievance procedure. The grievance supervisor did state that Plaintiff was placed in the file on May 15, 2017. (Id.)

(20) Plaintiff filed an appeal of this decision to Chief Deputy Director William Straughn. He refused to reverse the decision placing him in the file. (Id.) As a result, Plaintiff has exhausted his administrative remedies.

## VI. Legal Claims

(21) Plaintiff realleges and reincorporates by reference Paragraphs 1-20 as if argued here.

(22) The decision to place Plaintiff in an STTG file absent any evidence to the contrary and based solely on his past, his advocacy of certain causes, and his travels to the Muslim world violated his First and Fourteenth Amendment rights to free speech and expression and procedural

11

due process,

(23) At no point in the 11 years that Plaintiff has been incarcerated has he ever been associated with any gangs, groups, nor has he engaged in conduct by himself that would justify placing him in such a file. Plaintiff has painstakingly attempted to be the righteous Muslim that Allah (swta) has commanded him to be. He has attempted to be an example to others as to how a Muslim should conduct himself. He has fought for the rights of incarcerated Muslims and he has also fought for the right guaranteed to him by the First Amendment to espouse the rights of Muslims to seek self-determination and resist occupation in Palestine.

(24) Even if Plaintiff were to openly advocate the use of terrorism as a tool in the fighting of a just war, such speech would be protected. American free speech doctrine will not permit,

nor does it permit, speech of this kind to be criminalized so long as it falls short of direct solicitation or conspiracy. Incitement to law violation is constitutionally protected, unless it falls within the narrow <u>Brandenburg vs. Ohio</u>, 395 U.S. 444, 1969, (per curiam) exception, "The constitutional guarantees of free speech and press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." (Id. at 448)

(25) Generalized praise of the Islamic State, or even of terrorist violence, is protected speech. (See Scott Shane et al, "<u>Americans Attracted to ISIS Find An 'Echo Chamber' On Social Media</u>, N.Y. Times (Dec. 8, 2015), https//www.nytimes.com/2015/12/09/us/americans-attracted-to-isis-find-an-echo-chamber-on-social-media.html?_r=1) <u>Brandenburg</u> allows people to preach that the Islamic State is a social movement devoted to protecting Muslims

and fighting an unfair global economic system, that it does not discriminate on the basis of race or nationality; that it uses violence in self defense and in ways that mimic Western films and video games, and that Westerners who join the fight in Syria and Iraq are normal people fighting a just war. (Id.) Because Plaintiff has advocated the use of violence in defense of Muslims and to resist foreign occupation, such actions are protected speech and do not justify placement in an STTG file.

(26) Justice Oliver Wendell Holmes made a more general point: "Every idea is an incitement. It offers itself for belief, and if believed, it is acted on unless some other belief outweighs it or some failure of energy stifles the movement at its birth." (See <u>Gitlow vs. New York</u>, 268 U.S. 652, 673, 1952) (Holmes, J., dissenting) Just because Plaintiff's ideas and ideology are inciteful does not

mean that it justifies placing him in an STTG file.

(27) Then, there is the issue of procedural due process. Currently, there is no system in place in the Division of Correction to address placement in an STTG file after the fact. In other words, there is no adequate post-deprivation remedy available to challenge Plaintiff's designation. Plaintiff also was not afforded any type of hearing before being so designated. Due process contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them. (See Daniels vs. Williams, 474 U.S. 327, 1986)

(28) Defendant Higgins cannot produce any evidence justifying placement of the Plaintiff in the file. Defendant Higgins cannot show that Plaintiff has engaged in any activities that jeopardize the security and good order of the institution, much less gang activity. Defendant Higgins cannot produce any evidence demonstrating

15

that the Plaintiff is a "high ranking leader" of any group, much less that he belongs to a group, Defendant Higgins cannot demonstrate that Plaintiff is a leader of a prison based jihadist group or gang. Plaintiff, in all candor, can categorically state that not one Muslim or so called Muslim that he has interacted with thus far in the Division of Correction would even remotely come close to being a jihadist. Most are still stuck in the dunya (world), are gang members masquerading as Muslims, or are only registered as Muslims to enjoy the benefits of Eid and Ramadan.

(29) Given that Plaintiff was denied due process both before and after placement in the STG file, and there is no post or pre-deprivation remedy available in the Division of Correction to correct erroneous placement in the STG file, this Court should strike down the criteria for placement in the file as unconstitutional due to procedural due process concerns.

(30) Being placed in an STG file brings with it collateral consequences, including increased scrutiny, targeted and frequent shakedowns, and transfers designed to harass and disrupt; Further, as Plaintiff was advised, should any other members of his phantom "group" do anything, he would be subjected to placement in restrictive housing, This should shock the conscience of the Court and it offends common standards of decency,

(31) What the Defendant is going to be hardpressed to explain is why for the first 2 years of his incarceration, there was no mention of Plaintiff being a jihadist or domestic terrorist in ADC files, yet on May 15, 2017, he was placed in such a file with this designation,

(32) Plaintiff contends that he was placed in that file for his activities defending and establishing true Islam in the Division of Correction and for defending the rights of Muslims to used armed force against illegal occupation

17

and to resist oppression everywhere. This was protected speech under the First Amendment. Plaintiff asserts that these efforts in defense of Islam are being besmirched by the Defendant in an effort to characterize them as gang related. Plaintiff refuses to let the Defendant label him, because he only wants to stand out for one reason, being a righteous Muslim that does not involve himself in the penitentiary lifestyle. Plaintiff aspires to become a mullah and a scholar.

(33) Declaratory and injunctive relief is appropriate.

## Countl- Willful and Wanton

(34) Plaintiff realleges and reincorporates by reference herein paragraphs 1-33 as if argued here.

(35) Defendant maintained a course of action by placing the Plaintiff in an STG file and then refusing to remove him when Plaintiff protested. This course of action demonstrated

a deliberate intention to harm the Plaintiff
by subjecting him to increased scrutiny, targeted
and frequent shakedowns, transfers designed
to harass and disrupt and threats of placement
in restrictive housing should members of an
unknown and undisclosed "group" decide to "do
something" It also constituted a conscious disregard
for Plaintiff's First Amendment rights of speech
and expression and his 14th Amendment procedural
due process rights.

(36) Defendant was aware of all of the
potential collateral consequences that could
result from placement in an STG file, Defendant
recklessly disregarded the consequences of
those actions.

(37) Plaintiff is entitled to declaratory
and injunctive relief for the willful and wanton
conduct of the Defendant.

## Count II - Intentional Infliction Of Emotional Distress

(38) Plaintiff realleges and reincorporates by reference herein paragraphs 1-37 as if argued here,

(39) The acts and conduct of the Defendant as set forth above were outrageous, The Defendant intended to cause, or was in reckless disregard of the probability that his conduct would cause, severe emotional distress,

(40) Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress,

(41) The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights,

(42) Plaintiff is entitled to declaratory and injunctive relief for the intentional infliction of emotional distress,

## Count III - Violation Of First And Fourteenth Amendment To the United States Constitution

(43) Plaintiff hereby realleges and reincorporates by reference herein paragraphs 1-42 as if fully set forth herein,

(44) The First Amendment to the U.S. Constitution provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech...." The Free Speech Clause applies with full force and effect to the acts of state and local government entities and officials pursuant to the Due Process Clause of the 14th Amendment of the U.S. Constitution.

(45) Free speech welcomes the open collision of moral views, which many people will find troubling. When John Stuart Mill's classic defense of free speech balances liberty against harm, Jeremy Waldron has observed that balancing cannot count the moral distress of having your most

cherished views denounced as harm or of
contemplating ways of life antithetical to your
own. (See Jeremy Waldron, Mill and the Value of
Moral Distress, Liberal Rights Collected Papers
1981-1991, at 115, 1993) A core value of free speech
is that it will and must induce such distress. Mill,
and liberalism more generally, places great value
on "ethical confrontation—the open clash between
earnestly held ideals and opinions about the
nature and basis of the good life." (Id. at 130)
Moral distress, "far from being a legitimate
ground for interference ..... is a positive and healthy
sign that the processes of ethical confrontation
that Mill called for are actually taking place."
(See Andrew Koppelman, Waldron, Responsibility-
Rights, and Hate Speech, 43 Ariz. St. L. J. 1201, 1215-21,
2012) Part of the reason for protecting illiberal
ideas is that they promise to induce that distress.
(See Steven H. Shiffrin, The First Amendment,
Democracy, And Romance, 87, 1990)

22

(46) Just because Defendant Higgins is distressed at Plaintiff's advocacy of illiberal ideas doesn't justify placing him in an STG file that should be reserved for those who engage in organized criminal gang activity, or engage in conduct that is a threat to the security and good order of the institution.

(47) Plaintiff has suffered the loss of his First Amendment freedoms by being unable to openly advocate on those matters important to him and other Muslims due to the chilling effect of the file and the implied threats of placing him in restrictive housing should an unknown and unidentified "group" do something. Plaintiff is also being targeted for past advocacy and speech.

(48) Plaintiff's 14th Amendment procedural due process rights were violated due to there being no pre-or-post-deprivation remedy available in the Division of Correction in which

to challenge the placement of one in the file,
Such makes the procedures for determining
placement unconstitutional,

## Prayer for Relief.

Wherefore, Plaintiff requests that this
Court enter judgment in his favor and against
the Defendant on each and every count in this
Complaint, and issue an order awarding the following
relief;

(1) A declaratory judgment that;

    (a) The placement of Plaintiff in the STG
    file violates his First Amendment rights
    to speech and expression;

    (b) That Plaintiff was targeted for espousing
    unpopular ideas;

    (c) That the failure of the Division of Correction
    to provide pre and post placement remedies
    violates Plaintiff's 14th Amendment procedural
    due process rights; and

    (d) Due to the failure to provide procedural

24

protections, the criteria for placement
is unconstitutional.

(2) An injunction that:

 (a) Requires the Defendant to remove
  Plaintiff's name forthwith from the
  STTG file;

 (b) Bars the Defendant from placing his
  name back in the file absent extraordinary
  circumstances;

 (c) Requires the Defendant to purge any
  information regarding Plaintiff's past
  advocacy or beliefs from any comparable
  files, and

 (d) Forbids the Defendant, the IL-9 Unit,
  or any employees acting in concert
  with them from harassing the Plaintiff,
  including, but not limited to, targeted
  cell shakedowns, destruction or confiscation
  of legal property, etc. in retaliation for
  filing this suit.

(3) Attorney's fees, costs, and expenses of all
litigation, pursuant to 42 U.S.C. Section 1988; and

(4) Such other and further relief as the

Court may deem just, proper, and equitable,

## Jury Demand

Now comes the Plaintiff and hereby demands a jury trial of the above-referenced causes of action so triable,

Dated: 12-16-21

Respectfully submitted,
Abdul Maalik Muhammad
Abdul Maalik Muhammad #129616
(Gregory Holt)
Maximum Security Unit
2501 State Farm Rd,
Tucker, AR 72168

26

<u>Verification</u>

I verify that the foregoing is true and correct to the best of my knowledge, except as to matters based upon information and belief, and as to those, I believe them to be true under penalty of perjury.

Signed: Abdul Maalik Muhammad (Gregory Holt)

Date: 12-16-21

Executed at: Tucker, Arkansas

<u>UNIT LEVEL GRIEVANCE FORM</u> (Attachment I)

Unit/Center ___Maximum Security___

Name ___Gregory Holt___

ADC# ___129616___  Brks # ___2-27___  Job Assignment ___Bks. Porter___

| FOR OFFICE USE ONLY |
| --- |
| GRV. # __MX-21-01163__ |
| Date Received: __8-3-21__ |
| GRV. Code #: __200__ |

__7-26-21__ (Date) STEP ONE: Informal Resolution

__8-2-21__ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: __Issue not resolved;__
__no answer at Step 1__

_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. In an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ __No__ _If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, name of personnel involved and how **you** were affected. (Please Print): On July 20, 2021, I spoke to Cynthia Gaines regarding inquiries she made to Jacob Higgins, who is the STG Coordinator, concerning my placement in an STG file. Ms. Gaines advised that the reason for that placement was due to the fact that they had received information from the Louisiana field office of the FBI that I was a "jihadist" and "domestic terrorist." Ms. Gaines stated that Mr. Higgins sent her this confirmation in an internal departmental e-mail. The problem with the STG designation is twofold. First, there has been no credible information presented that I have engaged in any activity while incarcerated in the ADC to justify placement in that file. Secondly, the placement is Islamophobic based entirely on my religious practices, beliefs, advocacy and past travels. It is unfair and unjustified and should be released immediately. This is an effort to exhaust administrative remedies.

___Gregory Holt___                                    ___7-26-21___
Inmate Signature                                      Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on __7/26/21__ (date), and determined to be **Step One** and/or an Emergency Grievance __N/C__ (Yes or No). This form was forwarded to medical or mental health? __NO__ (Yes or No). If yes, name of the person in that department receiving this form: _____  Date _____

___T. Wiley___          __0690__   ___S. Wiley___        __7/26/21__
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number RECEIVED Staff Signature    Date Received

Describe action taken to resolve complaint, including **dates**: _____

_____ AUG 0 9 2021 _____

_____ INMATE GRIEVANCES SUPERVISOR ___Gregory Holt___  __8-2-21__
Staff Signature & Date Returned   ADMINISTRATION BUILDING   Inmate Signature & Date Received

This form was received on __8/2/21__ (date), pursuant to **Step Two**. Is it an Emergency? __No__ (Yes or No).
Staff Who Received Step Two Grievance: ___Sgt. Sullivan___ Date: __8/2/21__
Action Taken: _____ (Forwarded to Grievance Officer/Warden/Other) Date: __8/2/21__
If forwarded, provide name of person receiving this form: _____ Date: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back to Inmate after Completion of Step One and Step Two.

ADCF-15
www.acicatalog.com



IGTT400
3GR

Attachment II

# ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate  Holt, Gregory H.
FROM:  King, Ashley N
DATE:  08/03/2021

ADC #:  129616C
TITLE:  Administrative Specialist I
GRIEVANCE #:  MX-21-01163

Please be advised, I have received your Grievance dated 07/26/2021 on 08/03/2021 .
Your grievance was rejected as either non-grievable, untimely, duplicative, frivolous, or vexatious.

*Ashley King*

Signature of Administrative Specialist

RECEIVED

AUG 0 9 2021

INMATE GRIEVANCES SUPERVISOR
ADMINISTRATION BUILDING

## CHECK ONE OF THE FOLLOWING

- ○ This Grievance will be addressed by the Warden/Center Supervisor or designee.
- ○ This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.
- ○ This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.
- ○ This Grievance has been determined to be an emergency situation, as you so indicated.

- ○ This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.
- ● This Grievance was REJECTED because it was either non-grievable ( ), untimely, was a duplicate of , or was frivolous or vexatious. *Added 5/15/2017. Resides outside of fifteen day allotted time frame.*

## INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below. *The grievance was written on July 26 regarding a conversation I had on July 20. It was well within 15 days. The grievance should be reinstated. The issue raised is meritorious.*

*Gregory Holt*

ADC#: 129616      8-5-21

Inmate Signature                      Date

IGTT430
3GD

Attachment VI

INMATE NAME: Holt, Gregory H.        ADC #: 129616        GRIEVANCE#:MX-21-01163

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On July 26, 2021, you stated the following complaint: "On July 20, 2021, I spoke to Cynthia Gaines regarding inquiries she made to Jacob Higgins, who is the STTG Coordinator, concerning my placement in a STTG file. Ms. Gaines advised that the reason for that placement was due to the fact that they had received information from the Louisiana field office of the FBI that I was a "Jihadist" and "domestic terrorist." Ms. Gaines stated that Mr. Higgins sent her this confirmation in an internal department e-mail. The problem with the STTG designation is twofold. First, there has been no credible information presented that I have engaged in any activity while incarcerated in the ADC to justify placement in that file. Secondly, the placement is Islamophobic based entirely on my religious practices, beliefs, advocacy and past travels. It is unfair and unjustified and should be removed immediately. This is an effort to exhaust administrative"

Your unit level grievance was rejected on August 3, 2021, due to being untimely.

Your appeal was received on August 9, 2021. After review of your appeal and supporting documentation, I find by your own admission, you are appropriately labeled in your STTG file. Your appeal is without merit.

Appeal denied.

_____        8-11-21
Director                                              Date

Gregory Holt # 129616
(Abdul Maalik Muhammad)
Maximum Security Unit
2501 State Farm Rd.
Tucker, AR 72168

Legal

RECEIVED
US DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

2021 DEC 20  A 9: 38

TAMMY ____, ____.

MAXIMUM
SECURITY
UNIT

NEOPOST       FIRST
12/17/2021
US POSTAGE  $002

ZIP
041M1

United States District Court Clerk
600 W. Capitol Room A-149
Little Rock, AR 72201